**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, et al., | : : : : | **OPINION** |
| Plaintiffs, | : : | Civ. No. 2:09-cv-02636 (WHW) |
| v. | : : : |   |
| JF-TOTOWA DONUTS, Inc., et al., | : : |   |
| Defendants. | : : |   |

**Walls, Senior District Judge**

Plaintiffs Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC, DD IP Holder LLC, and DB Real Estate Assets I LLC (collectively, "Dunkin'") move for summary judgment on Counts I-VI of their Second Amended Complaint. Defendants JF-Totowa Donuts, GA Newton Donuts, JF-Wharton Donuts, JF-Fairfield Donuts, Sejal Newton Donuts, 51 Newton Donuts, Sejal Wharton Donuts, Sejal Stockholm Donuts, Sejal Hamburg Donuts, Ashwin Prajapati and Gregory Lulko (collectively "Defendants") oppose, and also move for summary judgment on Dunkin's Second Amended Complaint, which Dunkin' opposes. The motions have been decided from the written submissions of the parties under Federal Rule of Civil Procedure 78. Defendants' motion for summary judgment is denied. Dunkin's motion for summary judgment is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Between April of 2002 and February of 2009, Dunkin' entered into a series of franchise agreements (the "Franchise Agreements") with Defendants allowing Defendants to own and

NOT FOR PUBLICATION

operate various Dunkin' Donut shops in the state of New Jersey.[1] Defendant Prajapati is an officer, member, and/or a majority shareholder in all nine defendant franchises involved in this action, and Defendant Lulko is an officer, member, and/or minority shareholder of GA Newton Donuts, JF-Wharton Donuts, Sejal Newton Donuts, 51 Newton Donuts, and Sejal Wharton Donuts. Dunkin's Statement of Undisputed Facts ¶¶ 16-17 (ECF No. 154-2); Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶¶ 16-17 (ECF No. 158-25).

Under the Franchise Agreements, Defendants agreed that they would comply with all applicable laws, ordinances, rules, regulations and orders of public authorities pertaining to the maintenance and operation of the franchise unit (the "obey all laws" provision), *see* First Ackerman Cert., Ex. A, Franchise Agreement § 5.1.7 (ECF No. 153-3), that they would not use the franchise premises for any illegal or unauthorized purpose, *id.* § 9.0.3, and that the unauthorized use of the Dunkin' proprietary marks during or after the expiration or earlier termination of the agreement would constitute an incurable default causing irreparable harm and would constitute

---

[1] Defendant JF-Totowa Donuts, Inc. became the owner of a Dunkin' Donuts shop located at 580 Route 46 East, Totowa, NJ pursuant to a Franchise Agreement dated June 6, 2007. Defendant GA Newton Donuts LLC became the owner of a Dunkin' Donuts shop located at 26 Hampton House Road, Newton, NJ pursuant to a Franchise Agreement dated April 7, 2005. Defendant JF-Wharton Donuts, Inc. became the owner of a Dunkin' Donuts shop located at 321 Route 15, Wharton, NJ pursuant to a Franchise Agreement dated August 11, 2005. Defendant JF-Fairfield Donuts, Inc. became the owner of a Dunkin' Donuts shop located at 397 Route 46 West, Fairfield, NJ pursuant to a Franchise Agreement dated June 6, 2007. Defendant Sejal Newton Donuts LLC became the owner of a Dunkin' Donuts shop located at 437 Route 46 East, Rockaway, NJ pursuant to a Franchise Agreement dated April 24, 2008. Defendant 51 Newton Donuts LLC became the owner of a Dunkin' Donuts shop located at 51 Water Street, Newton, NJ pursuant to a Franchise Agreement dated August 21, 2008. Defendant Sejal Wharton Donuts LLC became the owner of a Dunkin' Donuts shop located at 314 Route 15 (Shop Rite), Wharton, NJ pursuant to a Franchise Agreement dated August 30, 2008. Defendant Sejal Stockholm Donuts LLC became the owner of a Dunkin' Donuts shop located at 2737-1 State Highway 23, Stockholm, NJ pursuant to a Franchise Agreement dated October 24, 2008. Defendant Sejal Hamburg Donuts LLC became the owner of a Dunkin' Donuts shop located at 3672 Route 94 North, Hamburg, NJ pursuant to a Franchise Agreement dated February 25, 2009. Defendants Prajapati and Lulko formerly owned a company called JFRD Newton Donuts, Inc., which owned a Dunkin' Donuts shop located at 126 Water Street, Newton, NJ pursuant to a Franchise Agreement dated December 22, 2008. The store operated by JFRD Newton Donuts, Inc. closed around July 2009. JFRD Newton Donuts, Inc. was, but no longer is, a defendant in this case. *See* Dunkin's Statement of Undisputed Facts ¶¶ 5-17; Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶¶ 5-17.

**NOT FOR PUBLICATION**

willful trademark infringement, *id.* § 9.4.3. Defendants further agreed that it would be a default under the Franchise Agreements if they were convicted of any crime or offense that Dunkin' believed injurious to Dunkin's systems, proprietary marks or their associated goodwill, or if Dunkin' had proof that Defendants had committed such a felony, crime or offense. *Id.* § 9.0.2. Defendants also agreed to keep full, complete, and accurate books and records in accordance with generally accepted accounting principles and in a form and manner to be prescribed by Dunkin'. *Id.* § 5.2. The Franchise Agreements specify that no cure period is available to Defendants if Defendants are in default under certain provisions of the Agreement, including §§ 9.0.1-9.0.4, or if they otherwise commit an act of fraud with respect to their obligations under the Agreement. *Id.* § 9.1.4.

The Franchise Agreements for 51 Newton Donuts, Sejal Wharton Donuts, Sejal Hamburg Donuts, Sejal Newton Donuts, and Sejal Stockholm Donuts contain a "cross-default" provision,[2] which states that it will be a default under the Franchise Agreement if Dunkin' terminates "any other franchise agreement with you or any affiliated entity by reason of a default" under certain provisions, including for the commitment of any crime or offense that is injurious to the Dunkin' system or goodwill, regardless of prosecution or conviction; the commitment of a fraud; or the use of any business franchised or licensed by Dunkin' for an unauthorized purpose. Laudermilk Cert., Exs. 1.E-1.J, Franchise Agreements §§ 14.0.3-14.0.6 (ECF Nos. 154-9–154-14).

Defendant GA Newton Donuts LLC became a lessee of DB Real Estate Assets I for the shop located at 26 Hampton House Road, Newton, New Jersey pursuant to a sublease dated April 7, 2005 with Dunkin' Donuts Incorporated (the "Sublease") that was later transferred to DB Real Estates Assets I. *Id.*, Ex. 1.K, Sublease (ECF No. 154-15); Dunkin's Statement of Undisputed

---

[2] The Franchise Agreement for former defendant JFRD Newton Donuts, Inc. also contains a "cross-default" provision. *See* Laudermilk Cert., Ex. J, Franchise Agreement § 14.0.6 (ECF No. 154-14).

Facts ¶ 33 (ECF No. 154-2); Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶ 33 (ECF No. 158-25). The Sublease provides DB Real Estate Assets I with the right to terminate the Sublease if the corresponding Franchise Agreement for the shop is terminated for any reason. Laudermilk Cert., Ex. 1.K, Sublease § 14(a) (ECF No. 154-15).

Dunkin' and Defendant Prajapati executed a Store Development Agreement ("SDA") dated March 27, 2008 under which Defendant Prajapati was to develop Dunkin' Donuts franchises within a designated geographical area. *Id.*, Ex. 1.L, SDA § 1 (ECF No. 154-16). Under the SDA, Defendant Prajapati agreed that the right to develop the units was contingent upon not being in default of the SDA or any Franchise Agreements Defendant Prajapati may have with Dunkin'. *Id.* § 8; Dunkin's Statement of Undisputed Facts ¶ 34 (ECF No. 154-2); Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶ 34 (ECF No. 158-25).

On July 28, 2008, Dunkin' sent a letter to JF-Totowa Donuts, JF-Fairfield Donuts, GA Newton Donuts and JFRD-Newton Donuts (no longer a defendant in this case) requesting that they produce certain books and records, including corporate tax returns, E-Verify user audit reports, employee applications, I-9, W-2, W-4, and 941 forms, crew work schedules, time cards, and weekly payroll registers for the shops owned by those entities. Laudermilk Cert., Ex. M, July 28, 2008 Letter at 1 (ECF No. 154-17).

On May 28, 2009, Dunkin' sent Defendants a "Notice of Default and Termination" terminating the Franchise Agreements, Sublease and SDA effective sixty days from Defendants' receipt of the Notice. First Ackerman Cert., Ex. F, May 29, 2009 Notice of Default and Termination at 1 (ECF No. 153-8). That Notice stated that the grounds for termination were

**NOT FOR PUBLICATION**

Defendants' violation of paragraphs 5.1.7, 8.0.1, 9.0.2, 9.0.3, and 5.2 of the Franchise Agreements,[3] specifically stating:

> [Y]ou have engaged in a scheme to violate applicable labor laws and tax laws, by among other things, failing to pay numerous employees substantial sums at minimum wages and at overtime wage rates due for work in excess of 40 hours per week in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, by failing to accurately report employee wages, and by failing to pay all payroll taxes due. . . . [You violated] the Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, as well as applicable state law. In addition, you violated applicable immigration and employment laws, including the Federal Immigration and Nationality Act, 8 U.S.C. §§ 1324a(a)(1) and (2), by knowingly hiring and knowingly continuing to employ individuals who are not authorized to work in the United States. You also violated 8 U.S.C. § 1324(a)(b) requiring employers to examine documents submitted for employment verification. Furthermore, you failed to create and maintain accurate records, including but not limited to payroll, tax, and employment documents.

*Id.* at 2-3.

Dunkin' then filed a complaint against Defendants on May 29, 2009 seeking a declaratory judgment order stating that Defendants' conduct violated the terms of the Franchise Agreements, Sublease and SDA and constituted grounds for termination based on Defendants' alleged breach of contract (Counts I-III), trademark infringement (Count IV), unfair competition (Count V), and trade dress infringement (Count VI). Compl. ¶¶ 50-74 (ECF No. 1); *see also* Second Am. Compl. ¶¶ 53-77 (ECF No. 117).[4] Defendants served and filed their Answer to the Complaint on June 17,

---

[3] Paragraph references in the Notice were to the GA Newton Donuts Franchise Agreement, but Dunkin' stated that substantially similar provisions exist with varying paragraph numbers in all of the Franchise Agreements at issue. First Ackerman Cert., Ex. F, May 29, 2009 Notice of Default and Termination at 2 (ECF No. 153-8).

[4] Dunkin' also seeks: a judgment for Dunkin' for the damages they incurred as a result of the breaches of the Franchise Agreement; an injunctive order ratifying and enforcing the termination of the Franchise Agreements, Sublease, and SDA as of the effective date of the Notices of Termination; the enjoinment of Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin'; an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Dunkin'; a judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions; an award of prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117; an award for Dunkin' for such exemplary or punitive damages as are

**NOT FOR PUBLICATION**

2009, ECF No. 24, asserting four counterclaims, which Dunkin' answered on August 4, 2009, ECF No. 28. An amended complaint was filed on August 31, 2009, removing JFRD-Newton Donuts, Inc. as a party, and adding Sejal Hamburg Donuts as a party, and Defendants answered that amended complaint on September 24, 2009. ECF Nos. 32, 33. The parties then engaged in discovery, and a second amended complaint was filed by Dunkin' on June 7, 2012, ECF No. 117, which Defendants answered on June 21, 2012, re-asserting the four counterclaims, ECF No. 118, and after which discovery continued. Both Dunkin' and Defendants filed motions for summary judgment on July 22, 2013, ECF Nos. 153, 154, and both were opposed on August 23, 2013, ECF Nos. 157, 158. Dunkin' and Defendants both replied on September 20, 2013. ECF Nos. 162, 163.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute as to a material fact is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.* The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). If the movant carries this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). At this stage,

---

deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants; an award for Dunkin' for its costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and an award for Dunkin' of any other relief this Court may deem just and proper. *See* Second Am. Compl., Prayer for Relief (ECF No. 117).

6

**NOT FOR PUBLICATION**

"the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

### I. Defendants' Motion for Summary Judgment

This Court first turns to Defendants' motion for summary judgment, which must be denied. Defendants make two arguments in their motion for summary judgment: that Dunkin' has failed to support its claims with evidence, and that Dunkin' has violated the New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1 *et seq.* ("NJFPA"). Defendants argue that as a result, Defendants should be awarded summary judgment as to all claims. Each of these arguments lacks merit.

Defendants argue that Dunkin's "failure to produce any documentary proof in support of its allegations against each Defendant is terminal to its claims," Defs.' Br. in Support of Summ. J. at 2 (ECF No. 155), and that Dunkin' "has utterly failed to present the scantest proof of any of its claims," *id.* Such contentions are not supported by the record. To the contrary, "[a]fter three years of litigation, two Amendments to Complaint, document production amassing thousands of pages of documents, Interrogatories and Depositions," *id.* at 1, both Dunkin's claims in its own motion for summary judgment, as well as in its opposition to Defendants' motion for summary judgment, are supported by numerous references to record evidence, including deposition transcripts, documentary evidence and expert reports. Dunkin' has not made empty allegations, but rather has provided evidence to support its claims. As a result, Defendants have not come close to

**NOT FOR PUBLICATION**

demonstrating their burden that no genuine issue of material fact exists in this case. Summary judgment must be denied. *Beard*, 548 U.S. at 529; Fed. R. Civ. P. 56(c)(1).

Second, Defendants contend that "this matter is governed by the [NJFPA]," Defs.' Br. in Support of Summ. J. at 7 (ECF No. 155), and that they are entitled to summary judgment because Dunkin' violated the NJFPA (1) by failing to comply with the NJFPA's termination provision and (2) by executing Franchise Agreements that "divest the franchisees of their ownership interests in the franchise without any compensation," *id.* at 8, 11. Again, these arguments must be rejected.

Defendants are correct that this matter is governed by the NJFPA because the subject franchisees are located in New Jersey. N.J.S.A. 56:10-1, *et seq*. The NJFPA reads:

> It shall be a violation of this act for any franchisor directly or indirectly through any officer, agent, or employee to terminate, cancel, or fail to renew a franchise without having first given written notice setting forth all the reasons for such termination, cancellation, or intent not to renew to the franchisee at least 60 days in advance of such termination, cancellation, or failure to renew . . . .

N.J.S.A. 56:10-5. The NJFPA further requires that a franchisor's termination of the franchise must be based on "good cause," which is expressly defined as a "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." *Id.*

Defendants first argue that Dunkin' violated the NJFPA requirement of sixty days written notice before termination, N.J.S.A. § 56:10-5, because none of the Notices of Default and Termination provided the required sixty day notice, and because Dunkin' filed the relevant Complaints less than sixty days after the Notices were sent to Defendants. Defs.' Br. in Support of Summ. J. at 8 (ECF No. 155). This argument is contradicted by the plain words of the Notices of Termination, which each contained the same material terms regarding termination and the required sixty-day notice: "Accordingly, as permitted by the Franchise Agreements, and for the reasons stated in this Notice of Default and Termination, Franchisor elects to and does hereby, without

**NOT FOR PUBLICATION**

further notice, terminate the Franchise Agreements *effective sixty days from receipt of this Notice*, or as provided by applicable law." First Ackerman Cert., Ex. F, May 29, 2009 Notice of Default and Termination at 3 (ECF No. 153-8) (emphasis added); *see also id.*, Ex. H, Aug. 17, 2009 Supplemental Notice of Default and Termination at 2 (ECF No. 153-10) (same); *id.*, Ex. J, Apr. 13, 2012 Supplemental Notice of Default and Termination at 3 (ECF No. 153-12) (same).

That the Complaint, First Amended Complaint and Second Amended Complaint were filed within sixty days of the issuance of the Notices of Termination does not make the Notices ineffective or amount to a violation of the NJFPA. The NJFPA does not prohibit a franchisor from beginning legal action by the filing of a complaint during the pendency of the sixty-day notice period, as the filing of a lawsuit does not act as a termination of the Franchise Agreements. *See, e.g.*, *Dunkin' Donuts Franchise Restaurants, LLC et al. v. Strategic Venture Grp., Inc.*, No. 07-cv-1923(SRC), 2007 WL 2332190, at *4-6 (D.N.J. Aug. 13, 2007) (holding that the NJFPA's termination provision "does not preclude a franchisor from initiating legal action . . . during the pendency of the 60-day notice period.").

In the Notices of Termination, Dunkin' listed specific conduct that violated the Franchise Agreement provisions cited, *see, e.g.*, Defs.' Br. in Support of Summ. J. at 10 (ECF No. 155); First Ackerman Cert., Ex. F, May 29, 2009 Notice of Default and Termination at 2-3 (ECF No. 153-8), and it follows that Dunkin' plainly met the NJFPA requirement that it give "written notice setting forth all the reasons for such termination." N.J.S.A. § 56:10-5.

Defendants' argument that Dunkin' violated the termination provision of the NJFPA by failing to provide "good cause" for the termination is a matter to be decided another day. As discussed later in this Opinion, Dunkin's motion for summary judgment is denied because Defendants have raised genuine issues of material fact about each of Dunkin's claims. Whether

9

**NOT FOR PUBLICATION**

Dunkin' had "good cause" to terminate the Franchise Agreements is an issue of fact to be decided by the trial fact finder.

Defendants also argue that the Franchise Agreements "divest the franchisees of their ownership interests in the franchise without any compensation" in violation of the NJFPA. Defs.' Br. in Support of Summ. J. at 11 (ECF No. 155). This argument also must fail at this stage of the litigation. If this Court finds, or it is adduced at trial, that termination was proper and done for "good cause" under the NJFPA, Defendants will not be entitled to any compensation for their interests in the subject franchisees, because the NJFPA "sensibly authorizes damages only to aggrieved franchisees and does not compensate those franchisees who have lost their franchises as a result of their own neglect or misconduct. . . . Accordingly, the statute does not disturb Dunkin' Donuts' common-law right to complete termination." *Dunkin' Donuts of America, Inc. v. Middletown Donut Corp.*, 100 N.J. 166, 178 (1985).

**II.     Dunkin's Motion for Summary Judgment**

Dunkin' seeks a "declaratory judgment order stating that the conduct of Defendants violates the terms of the Franchise Agreements, Sublease, and SDA, and constitutes grounds for terminating the Franchise Agreements, Sublease, and SDA." Second Am. Compl., Prayer for Relief (ECF No. 117).

The allegations Dunkin' makes against Defendants in order to support Counts I-VI can be broken down into three major categories: (1) Defendants filed false and inaccurate corporate and personal tax returns (including Defendants' failure to maintain adequate and accurate books and records); (2) Defendants violated applicable immigration laws by failing to collect required identification documents (I-9s); and (3) Defendants committed identity theft in violation of the Franchise Agreements. Dunkin's Br. in Support of Summ. J. (ECF No. 154). Defendants have

raised genuine issues of material fact in all three categories. It follows that Dunkin's motion for summary judgment must be denied.

### A. Allegation That Defendants Filed False And Inaccurate Corporate And Personal Tax Returns

Dunkin' alleges that Defendants violated the federal tax laws, and therefore the Franchise Agreements, in three separate ways:

> (1) [T]hey surreptitiously buried income to Prajapati under the "Management Fee" expense category of the franchise companies, improperly reducing the income of the franchise companies and Prajapati's taxable income. Prajapati paid no income taxes on these distributions; (2) they buried loan repayments under the "Management Fee" category of one of the franchise companies, again improperly reducing the company's and Prajapati's income; and (3) they failed to maintain accurate books and records; there were well over $1,000,000 in discrepancies among the tax returns, profit and loss statements, and general ledgers for the franchise companies from 2007 to 2010.

*Id.* at 4-5. The Court addresses these contentions:

    1. Income under the "Management Fee" expense category

Dunkin' contends that Defendant Prajapati perpetrated a scheme that involved hiding his income within the Management Fee category of several of his franchise companies, which ultimately led to the willful filing of false tax returns by the companies and the filing of false returns and tax evasion by himself, all in breach of the Franchise Agreements. *Id.* at 8.

Dunkin' claims that the 2007-2010 general ledgers for JF Wharton, JFRD Newton and GA Newton showed $132,026 in payments made to Prajapati through the Management Fee category. Dunkin's Br. in Support of Summ. J. at 9; Dunkin's Statement of Undisputed Facts ¶ 46. Dunkin' also claims that none of these payments were included in a Form 1099 as would be required if they were properly deducted as a management fee expense on the federal tax returns of the companies, nor were they included on Prajapati's personal income tax returns for the relevant time period. Dunkin's Br. in Support of Summ. J. at 9; Dunkin's Statement of Undisputed Facts ¶ 46.

11

**NOT FOR PUBLICATION**

Dunkin' points to the deposition testimony of Nitu Shah, the bookkeeper for Prajapati's franchises, that she booked expenses in the Management Fee category of the general ledgers of the franchisee companies at Prajapati's direction. Dunkin's Br. in Support of Summ. J. at 8-9; Dunkin's Statement of Undisputed Facts ¶ 41. Dunkin' also alleges that Rajeswra Maruvada, Prajapati's Certified Public Accountant ("CPA"), testified in his deposition that he prepared the tax returns for the franchisee companies and Prajapati's personal returns based on limited information provided by Prajapati and Shah, which included the profit and loss statements, and that had he known of the payments to Prajapati, he would have included them as income on Prajapati's tax returns. Dunkin's Br. in Support of Summ. J. at 9-10; Dunkin's Statement of Undisputed Facts ¶¶ 40, 49.

Defendants raise genuine issues of material fact with regard to these allegations. As an initial matter, the record is far from clear on what Maruvada reviewed in preparing the tax returns for the Defendants, as well as what he re-categorized from the records he was provided when preparing Defendants' tax returns. This makes it impossible to account for any alleged discrepancies between the profit and loss statements, general ledgers and the final year-end tax returns. *See* Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶ 39 (ECF No. 158-25); Second Ackerman Cert., Ex. 2, Dep. of Rajeswra Maruvada, at 80:3-22–81:1-20 (ECF No. 158-3); *see also id.* at 80:3-4, 81:19-20 (Maruvada explaining that when preparing year-end tax returns, "I cannot trust the accuracy of their accounting" and what steps he took to compensate for that); *id.*, Ex. 7, Expert Report of Michael J. Napolitano, CPA ¶ 21 (ECF No. 158-8) (stating that Dunkin's and Dunkin's expert Durney's repeated reference to Maruvada's testimony that he prepared the tax returns from a different set of profit and loss statements "appears to [refer to] a set of Profit and Loss statements that Marvada [sic] adjusted."). Defendants also point out that

12

**NOT FOR PUBLICATION**

certain documents relied on by Dunkin' are not year-end ledgers or statements, and therefore they cannot accurately represent what documents were relied on for the preparation of Defendants' final tax returns. *See* Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶ 45 (ECF No. 158-25).

Dunkin's contention that Maruvada did not know about payments of management fees to Prajapati when he prepared Defendants' tax returns is explicitly contradicted by the testimony of Shah, who stated that Maruvada asked her about the management fees, and that she provided him "with a breakdown of the amount of money that was made out to Ashwin Prajapati personally versus the amount of money that was made out to Ashwin Management, Inc." Second Ackerman Cert., Ex. 3, Dep. of Ritu Shah at 58:13-22 (ECF No. 158-4). *See also id.*, Ex. 7, Expert Report of Michael J. Napolitano, CPA ¶ 16 (ECF No. 158-8) (quoting the deposition transcript of Nitu Shah, where she stated that Maruvada "had asked occasionally about management fees, about the details of management fees, so I would print out this section for him"); Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶¶ 43-44 (ECF No. 158-25) (citing testimony from Shah's deposition that with regard to management fees, "the statements of the checks were then sent to Mr. Maruvada who was able to re-categorize them properly").

Defendants raise genuine issues of material fact as to whether Defendants willfully prepared false tax returns to "perpetuate a scheme" as Dunkin' alleges. Defendants demonstrate that the record is unclear as to what records Maruvada reviewed and as to what records correspond to the final tax returns prepared by Maruvada and whether there is any discrepancy between them. They also raise the possibility that Maruvada reviewed the various Management Fee payments recorded by Shah and that he subsequently re-categorized such payments when preparing the tax returns. As a result, Defendants' "willfulness" is a question of fact that cannot be determined on this record.

**NOT FOR PUBLICATION**

> 2. Loan repayments under the "Management Fee" expense category

Dunkin' also contends that Prajapati and JFRD Newton committed tax fraud in 2004-2005 by improperly booking a loan repayment to JDFD Management, Inc. as a payment of Management Fees and improperly deducting the repayment as an expense, which reduced their income in violation of the tax laws and the "obey all laws" provisions of the Franchise Agreements. Dunkin's Br. in Support of Summ. J. at 10 (ECF No. 154-1). Dunkin' relies on Prajapati's testimony that he received various loans over the years from companies and acquaintances in order to finance the opening of his Dunkin' shops, Dunkin's Statement of Undisputed Facts ¶ 55 (ECF No. 154-2), Shah's testimony that payments made to JDFD Management, Inc. were loan repayments, *id.* ¶ 53, and JFRD Newton's Profit and Loss Statements from 2004 and 2005, along with its tax returns from those years, *id.* ¶¶ 50-51.

Dunkin' fails to carry its burden to show that no genuine issue of material fact exists as to these claims. The allegations Dunkin' makes are based on activity that occurred in 2004 and 2005. The Court has not been provided with the Franchise Agreement that governed that franchisee during that time period, allegedly entered into on April 18, 2002, *see* Dunkin's Resp. to Defs.' Statement of Undisputed Facts ¶ 1 (ECF No. 156-1), and then superseded by a new Franchise Agreement signed December 22, 2008, *see id*. Nor does the record demonstrate who owned and controlled JFRD Newton during 2004-2005. *See* Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶ 50 (ECF No. 158-25) ("During that time period, Ashwin Prajapati owned a 15% interest in JFRD Newton Donuts, Inc. The entity was controlled by Falgun Dharia. The entity was managed by JDFD Management, Inc., Falgun Dharia's management company."); Dunkin's Statement of Undisputed Facts ¶ 52 ("JDFD Management, Inc. is a company owned by Falgun Dharia and Jagdish Patel, two former owners of the franchises owned by Defendants."). Without

this information, Dunkin' does not carry its burden to show that no genuine issue of material fact exists as to Prajapati's and JFRD Newton's alleged willful tax fraud. There is no evidence as to who was directing payments by JFRD Newton, or which entity was managing the franchise and who was or was not deserving of any management fees paid by the franchise.[5]

      3. Failure to maintain accurate books and records

Dunkin' claims that each of the Franchise Agreements contains a provision that required the franchise companies to maintain accurate books and records for a period of three years, Dunkin's Statement of Undisputed Facts ¶¶ 28, 60 (ECF No. 154-2), and that Defendants' conduct in failing to create and maintain accurate books and records constitutes a separate and independent breach of the Franchise Agreements, warranting termination. Dunkin's Br. in Support of Summ. J. at 15 (ECF No. 154-1).

To support this claim, Dunkin' relies on the same facts and information relied on for its above claims related to the payment of management fees and the related alleged fraudulent tax returns. *See* Dunkin's Br. in Support of Summ. J. at 17-20 (ECF No. 154-1) (quoting extensively from the expert report of Michael Durney regarding the management fees); Dunkin's Statement of Undisputed Facts ¶¶ 62-63 (quoting the same portions of the Durney report regarding management fees, and quoting a conclusory statement from the Castillo certification regarding management fees).

---

[5] Although Dunkin' claims that it submitted JFRD Newton's tax return for 2005, *see* Dunkin's Statement of Undisputed Facts ¶ 50 (ECF No. 154-2), that tax return was not actually included in the materials presented to the Court by Dunkin'. It follows that the Court cannot grant summary judgment on any allegation relying on JFRD Newton's 2005 tax return.

**NOT FOR PUBLICATION**

For the reasons already stated with regard to the allegations surrounding the payment of various management fees, genuine issues of material fact exist as to this claim.[6] Dunkin' has presented no allegations or evidence that any of Defendants' records were destroyed or improperly withheld from Dunkin'. For the allegations Dunkin' raises regarding the inaccuracy or inadequacy of Defendants' records, Defendants raise genuine issues of material fact not only by pointing to the evidence discussed in sections 1 and 2 earlier in this Opinion, but also by pointing to the records generated and maintained by the Radiant network (Dunkin's Point of Sale System) and the accounting program QuickBooks, as well as the multiple audits conducted by both Dunkin' and the Internal Revenue Service ("IRS") in which various Defendants were cleared as complying with record keeping requirements. *See* Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶ 64 (ECF No. 158-25).

### B. Allegation That Defendants Violated Applicable Immigration Laws

Dunkin' also alleges that termination of the Franchise Agreements is proper because Defendants breached the "obey all laws" provision of the Agreements by failing to fill out and maintain the form I-9, Employment Eligibility Verification Form, for their employees as required by the Immigration Reform and Control Act of 1986 ("IRCA"). 8 U.S.C. § 1324a (West 2013). Dunkin' contends that during discovery it requested I-9 forms for all of Defendants' stores from 2004 to 2009, and Defendants produced 51 I-9 forms for the 190 employees that Defendants supposedly hired between January 1, 2007 and September 17, 2009. Dunkin's Statement of Undisputed Facts ¶¶ 68, 72 (ECF No. 154-2).

---

[6] Dunkin' also claims that Defendants' failure to maintain I-9 forms violates the provision of the Franchise Agreement requiring that franchisees maintain accurate books and records. For the reasons stated below in section II(B) of this Opinion, that argument also must fail on this motion for summary judgment.

Again, Defendants have raised a genuine issue of material fact with regard to their good faith compliance with IRCA and the maintenance of I-9 forms. Prajapati asserts that many of the records requested were provided to Dunkin' during previous audits by Dunkin', and that those records were never returned to Defendants, *see* Aff. of Ashwin Prajapati ¶ 16 (ECF No. 158-9), a point which Dunkin' seems to partially concede, *see* Dunkin's Statement of Undisputed Facts ¶ 67 ("Dunkin' also had some documents from a previous investigation related to franchises owned by Prajapati.").

Prajapati also has provided Dunkin' and the Court a printout generated from his use of the federal government's E-Verify program—an internet-based system employers can use to check the work authorization status of employees—that indicates his compliance with I-9 and employment inquiries. Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶ 70 (ECF No. 158-25); Aff. of Ashwin Prajapati ¶ 23, Exs. K, L (ECF Nos. 158-20, 158-21). Defendants' participation in the E-Verify program provides them with a rebuttable presumption that they complied with the law. *See Chamber of Commerce of U.S. v. Whiting*, 131 S.Ct. 1968, 1985-86 (2011) (citing the Illegal Immigration Reform and Immigrant Responsibility Act § 402(b)(1)). The production of E-Verify and corresponding employment records, and Defendants' claims supported by the record that they previously provided Dunkin' with the requested records, raise genuine issues of material fact as to Defendants' material and good faith compliance with IRCA, and Dunkin' has failed to rebut the presumption of compliance at this stage of the litigation.

### C. Allegation That Defendants Committed Identity Theft

Finally, Dunkin' alleges that Defendants committed identity theft in breach of the Franchise Agreements by misappropriating the social security numbers and other identifying information of two former employees, Ajay Mori and Anant Patel, and another individual who was allegedly known to Prajapati, Hitesh Patel, and by using that information to verify

17

employment of other individuals who were "likely not authorized to work in the United States." Dunkin's Br. in Support of Summ. J. at 25-26 (ECF No. 154-1). Dunkin' contends that in each case, the third parties received notices from the IRS claiming that they owed additional income taxes for work allegedly performed for certain Defendants and for which they were not compensated, *see* Dunkin's Statement of Undisputed Facts ¶¶ 78, 84, 88 (ECF No. 154-2), and that Defendants produced W-2 forms for the third parties, which purport to show that the third parties received income from JFRD Newton, Sejal Sussex, and GA Newton Donuts, *id.* ¶¶ 79, 82, 90.

Defendants raise genuine issues of material fact with regard to this claim.[7] Dunkin' relies on deposition testimony from the three above-named individuals to support these allegations. *See* Dunkin's Statement of Undisputed Facts ¶¶ 75-78, 81-91 (ECF No. 154-2). Prajapati "vehemently disputes" the allegations through his affidavit, *see* Aff. of Ashwin Prajapati ¶¶ 19-20 (ECF No. 158-9), and in some cases refers to deposition testimony from third parties explicitly contradicting the testimony relied on by Dunkin'. *See* Defs.' Resp. to Dunkin's Statement of Undisputed Facts ¶¶ 81-85 (ECF No. 158-25). As they currently stand, these allegations boil down to one person's word against another's, and the credibility of the witnesses and their testimony cannot be determined on summary judgment and are factual issues left for trial.

### D. Defendants' Counterclaims

In their Answer to Dunkin's Second Amended Complaint, Defendants assert four counterclaims against Dunkin': (1) Defendants are entitled to a declaration that their franchises,

---

[7] And Dunkin' even contradicts itself in setting forth this claim: regarding the employment of Mori, Dunkin' first asserts that "Mori's employment in Prajapati's stores ended in the first half of 2007." Dunkin's Statement of Undisputed Facts ¶ 77 (ECF No. 154-2). Dunkin' then goes on to claim that Prajapati and JFRD Newton created a 2007 W-2 form in Mori's name in error because "Mori did not work for JFRD Newton during 2007." *Id.* ¶ 79.

leases and Store Development Agreement have not been terminated; (2) Defendants are entitled to a declaration that their use of plaintiffs' trademarks, trade names, and trade dress subsequent to the issuance of the Notices and letters set forth in the amended complaint does not constitute trademark infringement or subject them to liability under the Lanham Act or the common law of unfair competition; (3) Pursuant to the NJFPA Defendants are entitled to an injunction against termination of their franchises, leases and Store Development Agreement, damages in an amount to be determined at trial, and costs and reasonable attorney's fees; and (4) Plaintiffs' misconduct constitutes material breaches of the implied covenant of good faith and fair dealing arising from and under the Franchise Agreements that are the subject of this litigation. *See* Defs.' Answer to Second Am. Compl., Defenses and Countercls. ¶¶ 44-58 (ECF No. 118).

Dunkin' now also moves for summary judgment on each of those counterclaims. *See* Dunkin's Br. in Support of Summ. J. at 32-33 (ECF No. 154-1). As Dunkin' admits, "Defendants' first, second and third Counterclaims ask the Court to adjudicate the same issue raised by Dunkin's claims; that is, whether the Franchise Agreements were properly terminated because Defendants breached them." *Id.* at 32. It follows that because summary judgment is not appropriate on Dunkin's claims because of the genuine issues of material fact that Defendants have raised, summary judgment for Dunkin' on Defendants' first, second and third counterclaims is not appropriate.

Nor is summary judgment for Dunkin' appropriate on Defendants' fourth counterclaim, which alleges that Dunkin' violated the implied covenant of good faith and fair dealing. "A covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract

**NOT FOR PUBLICATION**

may breach that implied covenant even though that performance does not violate a pertinent express term." *Id.* "[T]he breach of the implied covenant arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner so as to have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002) (citation and quotation marks omitted). Dunkin' has not carried its burden of demonstrating the absence of an issue of material fact as to that claim and Defendants should be free to pursue it at trial. *See Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 263 (App. Div. 2002) ("[T]he presence of bad faith is to be found in the eye of the beholder or, more to the point, in the eye of the trier of fact.").

## CONCLUSION

Defendants' motion for summary judgment on Counts I-VI of Dunkin's Second Amended Complaint is denied. Plaintiffs' motion for summary judgment on Counts I-VI and on Defendants' counterclaims is also denied.

October 9, 2013

                                              **/s/ William H. Walls**
                                              United States Senior District Judge